UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARJUAN FLEMING,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. 1:14-cv-868

HON. ROBERT HOLMES BELL

______________________________/

**OPINION**

This matter comes before the Court on Movant Marjuan Fleming's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) and supplement thereto (ECF Nos. 6, 7). The Government has filed a response (ECF No. 13) and Movant has filed a reply (ECF No. 15). Also before the Court is Movant's motion for discovery and/or expansion of the record (ECF No. 9). For the reasons that follow, Movant's motions will be denied.

**I.**

In 2010, Movant was charged with four counts involving the distribution of cocaine base. (Indictment, *United States v. Fleming*, No. 1:10-cr-301 (W.D. Mich.), ECF No. 1.) Count 1 alleged that he distributed cocaine base on or about July 14, 2010. Count 2 alleged that he distributed cocaine base on or about July 15, 2010. Count 3 alleged that he distributed

cocaine base on or about July 21, 2010. Count 4 alleged that he distributed cocaine base on or about July 26, 2010. Count 5 alleged that, on or about July 28, 2010, he possessed with intent to distribute 5 grams or more of cocaine base. Count 6 alleged that, on or about September 24, 2010, he possessed with intent to distribute 28 grams or more of cocaine base.

Before trial, Movant's counsel filed a successful motion to suppress the evidence in support of Count 6, and that count was dismissed. Shortly before trial, the Government dismissed Counts 1, 2, and 4 of the indictment because the Kalamazoo Department of Public Safety destroyed the evidence and reports related to those counts. That left the distribution charge in Count 3 (occurring on or about July 21, 2010) and the charge of possession with intent to distribute in Count 5. Following a jury trial, Movant was found guilty of both counts and sentenced to a term of 276 months in prison. Movant appealed his conviction and sentence, but the Court of Appeals for the Sixth Circuit affirmed the Court's judgment. In 2014, Movant filed this motion to vacate, set aside or correct sentence raising the following claims:[1]

II. Trial counsel provided ineffective assistance by failing to request a cautionary instruction.

III. Trial counsel provided ineffective assistance by failing to object to an officer's testimony pursuant to Rule 704(b) of the Federal Rules of Evidence.

IV. Trial counsel refused to participate in the trial, failed to object to the introduction of a YouTube video, failed to move for a judgment of acquittal, and failed to give a limiting instruction.

---

[1]The Court will use the numbering of Movant's claims as they are set forth in his motion.

V. Trial counsel waived opening arguments, failed to make objections, and failed to effectively cross-examine witnesses.

VI. Trial counsel failed to object to government conduct that amounted to prosecutorial misconduct.

VII. Appellate counsel failed to challenge the search of Movant's residence.

VIII. Cumulative error resulting in ineffective assistance of counsel.

IX. Trial counsel failed to object to an impermissible identification of Movant during rebuttal testimony.

X. Trial counsel failed to seek appropriate remedies upon discovery of a *Brady* violation.

(*See* Mot. under § 2255, ECF No. 1, PageID.11.)

In a supplement to his motion filed in 2016 (ECF No. 7), Movant argues that he is entitled to relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Government argues that Movant's claims are meritless or are barred by procedural default.

**II.**

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-

constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

## III.

**Ground I. *Johnson* claim.**

In a supplemental pleading, Movant asserts that he is entitled to relief under the Supreme Court's 2015 *Johnson* decision. In that case, the Supreme Court held that the residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), is invalid.

*Johnson*, 135 S. Ct. at 2557. Movant was not sentenced under the ACCA; thus, *Johnson* does not apply.[2]

Movant also argues that he was improperly sentenced as a career offender under the Sentencing Guidelines. According to the version of the Guidelines in effect at the time of Movant's sentence,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a *crime of violence* or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a *crime of violence* or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2015) (emphasis added). Applying *Johnson* to the Sentencing Guidelines, the Sixth Circuit has held that part of the definition of "crime of violence" is invalid. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016).

Neither *Johnson* nor *Pawlak* apply to Movant's sentence because he was classified as a career offender due to two prior convictions for controlled substance offenses committed in Illinois. (*See* Information & Notice of Prior Drug Conviction, *United States v. Fleming*, No. 1:10-cr-301, ECF No. 36.) In other words, his sentence does not rely upon the invalidated portion of the definition of crime of violence. Thus, his *Johnson* claim is meritless.

[2]Moreover, contrary to Movant's assertion, he was not sentenced under 18 U.S.C. § 922.

**Ground II. Failure to request a cautionary instruction**

Movant argues that his counsel was ineffective for failing to request a cautionary instruction that a police officer was giving both fact and opinion testimony. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Movant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced Movant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Movant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.*; *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Officer Ferguson testified that he had been part of many investigations involving drug crimes. (Trial Tr. 8, *United States v. Fleming*, No. 1:10-cr-301, ECF No. 52.) He was familiar with how cocaine was used and distributed in the Kalamazoo area. Typically powder cocaine would be purchased and used in 1 gram quantities, whereas crack cocaine would be purchased and used in quantities of around .1 gram, which is 1/280th of an ounce. (*Id.* at 8-9.) This quantity of crack cocaine typically sold for approximately $20 in Kalamazoo.

Ferguson also testified that he used and paid confidential informants to buy drugs, one of whom was Cassandra Hargrave. In 2010, he used her to purchase crack cocaine from Movant at 910 North Westnedge, in Kalamazoo. (*Id.* at 19.) He subsequently obtained and executed a search warrant for the second-story apartment in that location. In the apartment, there were two bedrooms, one of which was locked. He and other officers forced their way into the locked bedroom and discovered a pair of shoes. Inside one of the shoes was a bag of approximately 20 grams of crack cocaine and a bag of marijuana. (*Id.* at 29.) In another shoe nearby were two receipts, one from a store and another from a bank. (*Id.*) The bank receipt had Movant's driver's license number on it. (*Id.* at 34.) Inside a drawer near the shoes was a digital scale. (*Id.* at 36.) In Ferguson's opinion, a bag of over 20 grams of crack cocaine was not consistent with mere use, because it would be the equivalent of over 200 individual bags of crack cocaine that could be purchased off the street. (*Id.* at 39.)

Movant argues that a cautionary instruction should have been given to distinguish Ferguson's lay and expert opinion testimony, and that without such an instruction, a jury was more likely to believe that Ferguson's opinions were fact. With such an instruction, Movant

claims that a jury would have been free to reject Ferguson's statements about the price of drugs, the quantity in which they are sold, and the manner in which dealers sold drugs on Westnedge.

Movant has not demonstrated prejudice. Ferguson's "opinions" about drug prices and sale quantities tended to show that the amount of drugs discovered in Movant's possession was for the purpose of sale and not use. But there was other evidence to support Movant's possession with intent to distribute. Hargrave testified that she purchased crack cocaine from Movant about 30 times. (*Id.* at 70.) On one occasion, he gave her crack cocaine that he retrieved from a tennis shoe. (*Id.* at 80.) Vivian Buchanan testified that she rented Movant's room to him, but she did not have the key for it. (*Id.* at 90-91.) She testified that neighbors were complaining about the number of people coming over to the house. (*Id.* at 92.) She told him to "quit selling out of the house," because she believed that he was selling drugs. (*Id.* at 93.) Kemberlyn Trotman, a cousin of Movant's, testified that he and Movant would pool their money to purchase cocaine. (*Id.* at 112.) Movant would cook his portion into cocaine base and then sell it. (*Id.* at 113.) Trotman saw Movant sell crack cocaine from the house on Westnedge approximately 200 times. (*Id.* at 114.) According to Trotman, Movant was the only one with a key to Movant's room. (*Id.* at 111.) In light of the foregoing evidence of possession and intent, Movant cannot demonstrate prejudice by counsel's failure to provide a cautionary instruction about Ferguson's testimony. Ample evidence other than Ferguson's opinions supported Movant's possession with intent to distribute the cocaine base discovered in his room.

**Ground III. Failure to object to Ferguson's testimony based on Fed. R. Evid. 704(b).**

Movant claims that his attorney should have objected to Ferguson's testimony under Rule 704(b), which provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). This claim is without merit because Ferguson did not testify about a mental state or condition of Movant that constituted an element of the crimes charged. Movant refers to testimony that Ferguson ordered Hargrave to purchase cocaine base from Movant and that she did so. This is not opinion testimony and it is not covered by Rule 704(b).

**Ground IV. Multiple claims of ineffective assistance.**

Movant asserts several claims of ineffective assistance of trial counsel. In particular, he asserts that counsel: (1) failed to participate in his trial proceedings; (2) failed to require notice under Rule 404(b)(2) of the Federal Rules of Evidence and failed to object to the introduction of a YouTube video and to request a limiting instruction on that video; and (3) failed to make a motion for a judgment of acquittal.

1. <u>Failure to participate</u>

Movant contends that counsel failed to participate by failing to object to evidence introduced at trial. Movant asserts that counsel should have objected to Ferguson's testimony

about the contents of an agreement between Ferguson and Hargrave, and to the introduction of a receipt that contained Movant's driver's license number. Movant does not identify any valid basis for objection to this evidence. It was not improper for the prosecutor to describe the agreement and then confirm with Ferguson that this was a standard agreement between an informant and the police.

Nor was it improper to introduce Ferguson's testimony about the receipt showing Movant's driver's license number. This evidence did not, as Movant asserts, violate the Confrontation Clause. Moreover, the receipt was cumulative of other evidence presented, so its exclusion would not have had an impact on the outcome of the proceedings. Buchanan testified that the locked room in which the drugs were found belonged to Movant, and that Movant never allowed anyone else into the room when he was not around. (Trial Tr. 91-92.) Thus, the receipt was not the only evidence of Movant's constructive possession of the drugs found in that room. Consequently, Movant has not established prejudice resulting from counsel's alleged failure to object.

2. <u>Failure to object to YouTube video and to request a limiting instruction</u>

At trial, the Government presented six minutes of a YouTube video in which Movant was seen carrying a satchel of money. According to Trotman, the money belonged to Movant, and Movant could not have obtained it in any manner other than selling crack cocaine because Movant did not have a job. (Trial Tr. 119-20.) Trotman testified that he paid to have the video made. The video showed a street party near Movant's home. (*Id.* at 115.) Other parts of the video not shown to the jury showed individuals singing along to a

recording of the rap song "Ecstasy Line," and the video was intended as a promotion of that song. (*Id.* at 121.)

Movant contends that his attorney should have objected to the video as irrelevant and prejudicial. According to Movant, the video depicted a bad stereotype of the "gangster" lifestyle. It contained offensive language, referred to the use and/or sale of drugs by others, and depicted individuals flashing guns[3] and jewelry. Moreover, the video was not made until after the offenses at issue occurred. Rather than object to its admission, Movant's counsel asserted on the record that she had seen the video and she consented to its admission. (*Id.* at 117.)

Contrary to Movant's assertion, the video was not irrelevant. It showed Movant in the possession of a large sum of money that, according to Trotman, belonged to Movant. The jury could reasonably infer that this money came from the sale of drugs, as Movant was not employed at the time. Unexplained wealth is considered relevant to the issue of whether an individual is a drug dealer. *United States v. Jackson-Randolph*, 282 F.3d 369, 377 (6th Cir. 2002). In addition, the video demonstrated Movant's ties to Trotman and Trotman's familiarity with Movant, and was relevant for that reason. The prosecutor played only a limited portion of the video to the jury, sufficient to establish Movant's connection to Trotman and to the money and valuables shown in the video. Consequently, the Court would not have granted an objection to exclude the video as being more prejudicial than relevant.

[3]Trotman testified that these guns did not belong to Movant. (Trial Tr. 120.)

Movant relies upon a decision by the Michigan Court of Appeals, in which the court held that the probative value of a rap video depicting the defendant was outweighed by the danger of unfair prejudice. In that case, the defendant was charged with felony-murder and armed robbery, and the video showed the defendant with others covering their faces with bandanas in a manner similar to the manner in which his face was covered during the charged offenses. *People v. Foster*, No. 320136, 2015 WL 2412383, at *5 (Mich. Ct. App. May 19, 2015). At one point in the video, the defendant rapped about "being 'strapped up' with a '45' and . . . about people being 'merked' or murdered." *Id.* The court of appeals found that the video may have been relevant to show that defendant associated with others who wore masks similar to those used in the commission of the offense, but the video was not relevant to show intent and motive. *Id.* at *6. The defendant's statements did not reveal any details about the offenses or share any characteristics about them. The defendant's statements were "nothing more than general assertions about obtaining money, carrying weapons, and, in general, acting tough." *Id.* In addition, the video was made several months before the offenses were committed, and other testimony indicated that the defendant and his cohorts came up with a plan for the robbery on the night of the robbery. Thus, any connection between the video and the defendant's intent was highly attenuated. When weighed against the presence of "profanity, misogynistic lyrics, drug references, and general references to violent and offense behavior" in the video, its probative value was outweighed by the danger of unfair prejudice. *Id.*

In contrast, the video evidence presented in Movant's case was more closely related to his offense. It was made within a few weeks after the offenses charged, and it depicted details about Movant's possession of money and jewelry, which was relevant to his intent, and his relationship to a key witness. Unlike the video in *Foster*, the video in Movant's case was relevant to his intent, and this relevance outweighed the prejudicial aspects of the video.

Movant also claims that the video contained hearsay, and should have been excluded on that basis. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(2). As indicated, the video was offered to show Movant's possession of a large sum of money and his relationship to Trotman. Generally speaking, except for statements by Movant about taking his money home, it was not offered to prove the truth of statements made in the video. Movant notes that the prosecutor stated in closing arguments that "[t]he video you saw was not promoting anything other than the excess of the participants[.]" (Closing Arguments Tr. 4, *United States v. Fleming*, No. 1:10-cr-30, ECF No. 56.) Here, the prosecutor was drawing attention to the wealth observed in Movant's possession; the prosecutor was not relying on hearsay statements.

The prosecutor also noted that the participants in the video bragged about the amount of money in Movant's satchel. (*Id.* at 4-5.) It is true that the statements in the video about the quantity of money in Movant's satchel was hearsay, if offered to prove that amount, but Trotman also testified in court about how much money was in the satchel. (Trial Tr. 119.) His testimony was not hearsay. Thus, Movant was not prejudiced by counsel's failure to object to any hearsay statements in the video.

Movant also contends that his counsel should have objected that the Government failed to provide notice of the evidence under Rule 404(b), which prohibits use of evidence of a "crime, wrong, or other act" to prove a person's character in order to show that a defendant acted in accordance with this character. The Rule allows such evidence for other purposes (including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"), provided that the prosecutor provides "reasonable notice" of the evidence and that the prosecutor intends to offer it at trial. Fed. R. Evid. 404(b)(2). Again, the video was not evidence of Movant's character, and was not offered as such. Moreover, the Government provided reasonable notice of its intent to use the video in a brief filed a week before the trial. By the time of trial, Movant's counsel confirmed that she had seen the video. An objection for lack of notice would have been futile.

Movant also claims that counsel should have asked for an instruction informing the jury to consider the video only for the purpose of evaluating Movant's character. It was not objectively unreasonable for counsel not to ask for such an instruction, given the relevance of the video and the purpose for which it was offered. In addition, Movant cannot show prejudice from counsel's failure to exclude the video or to provide a cautionary instruction, because of all the other evidence of Movant's intent to distribute, including prior instances of distribution of cocaine base. Indeed, Movant himself concedes that the video was not necessary for the Government's case. (Suppl. Br. 10, ECF No. 6.)

3. <u>Failure to move for acquittal</u>

Movant's trial counsel did not move for a judgment of acquittal, but there is no reasonable probability that such a motion would have been successful. The testimony of several witnesses about Movant's distribution of crack cocaine from the location where the drugs were discovered, as well as the quantity of the cocaine base discovered in Movant's constructive possession, as well as the presence of a digital scale near the cocaine, and the evidence of Movant's possession of unexplained wealth, provided strong evidence that he possessed the cocaine base with the intent to distribute it. Furthermore, Hargrave's unwavering testimony that she purchased cocaine base from Movant on multiple occasions, including July 21, 2016, was sufficient to establish his distribution on that date. Counsel did not act unreasonably by failing to make a futile motion.

**Ground V. Additional claims of ineffective assistance.**

1. <u>Failure to present an opening statement</u>

Movant notes that his counsel waived the opportunity to present an opening statement. This is not an uncommon strategic decision. *See Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2011) ("An attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.'") (quoting *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002)). Movant has not overcome the presumption that counsel's waiver was a strategic decision, nor has he shown any prejudice as a result of counsel's decision.

2. <u>Failure to effectively cross-examine witnesses</u>

(a) Ferguson

Movant asserts that counsel's cross-examination of Ferguson was ineffective because counsel should have inquired why Movant was charged with additional offenses if Hargrave made only one purchase of crack cocaine from Movant. But the testimony does not support Movant's assertion that Hargrave purchased crack cocaine from Movant on only one occasion. She testified that she purchased it from him about 30 times. (Trial Tr. 70.)

(b) Hargrave

Movant also refers to testimony that Hargrave purchased cocaine at Movant's house and received it from a female rather than Movant. (Trial Tr. 74.) But this incident occurred on July 26, and was not the incident charged in the indictment. (*See id.*)

3. Failure to object to Trotman's testimony

Movant contends that his counsel should have made multiple objections to testimony by Trotman. Specifically, Movant refers to the following testimony:

Q What did Marjuan do for a living?

A From my understanding he sold crack.

Q How do you know that?

A I mean, that's all that was around when I was out, so --

(Trial Tr. 111.)

Movant contends that the answer to the second question is hearsay because it is based on what others were saying about Movant. This assertion is unsupported. In subsequent testimony, Trotman explained that he and Movant purchased cocaine together, Movant cooked it into cocaine base, they divided it between themselves, and Trotman saw Movant

sell it. (*Id.* at 111-14.) Thus, Trotman's testimony is based on his personal knowledge, not the statements of others.

Movant also refers to an instance in which Trotman was asked: "How much cocaine were you buying?" (Trial Tr. 114.) Movant claims that this question was irrelevant because Movant was not charged with conspiracy. However, in context, it was relevant to show that Movant was working with Trotman to obtain and sell cocaine. It demonstrated the means by which Movant might have obtained the cocaine that was found in his possession, and to show that Movant was engaged in a regular practice of purchasing cocaine and then preparing it for distribution. Thus, the question was not irrelevant.

Movant also objects to the question, "You were buying 14 grams. How much was [Movant] buying at the time?" (*Id.*) Trotman testified that he and Movant did not purchase the cocaine together; sometimes, Trotman gave Movant money to purchase it for both of them. Thus, Movant contends that a proper foundation was not laid for this question, as Trotman did not necessarily know how much cocaine Movant was buying. However, Movant has not shown that Trotman's testimony would have been different if counsel had objected. Trotman had a basis for making this statement, given his working relationship with Movant and the fact that they were pooling their resources and divvying up the cocaine for sale. Moreover, the precise quantity that Movant himself purchased on any given occasion was not material to the Government's case.

Movant contends that his attorney should have objected to the following question as leading: "So you would buy about a half an ounce and he would buy two to three ounces.

You'd pool your money and get the cocaine; is that right?" (*Id.* at 112.) Trotman responded, "Yes." (*Id.*) Here, an objection would not have achieved anything. After an objection, the prosecutor could have rephrased the question and elicited the same response.

Movant also contends that the following question was vague: "Do you know who you were getting [the cocaine] from?" (*Id.*) According to Movant, the "you" was unclear. It could have referred to Trotman only, or to both Trotman and Movant. But after Trotman responded that Andreas Barajas was the source of the cocaine, the prosecutor cleared up any ambiguity by asking, "So you and [Movant] were buying it from Barajas; is that right?" (*Id.*) Trotman responded in the affirmative.

Next, Movant contends that the prosecutor asked leading questions and failed to lay a proper foundation for the following exchange, which occurred during the redirect examination of Trotman:

> Q All right. And you gave [law enforcement officers] information about a lot of people. They asked you about Barajas and some other relatives of yours. They asked you about other drug dealers in Kalamazoo and they mentioned Marjuan Fleming; is that right?
>
> A Yes.
>
> Q And you did tell them that Marjuan had been buying from Barajas; is that right?
>
> A Yes.

(*Id.* at 130.) None of this testimony was material; its admission was not prejudicial and an objection would not have had any impact on the outcome of the proceedings.

Movant also contends that his attorney should have objected during the following exchange:

> Q Who were you doing with the cocaine you were buying?
>
> A He would cook it up and --

(*Id.* at 112.) Movant contends that Trotman's answer was not responsive, and that as soon as Trotman said "he," Movant's counsel should have objected and moved to strike the answer. Movant asserts that the prosecutor was asking a question about "what" Trotman was doing with the cocaine, and that an answer referring to Movant was not answering the question. This is not quite correct, because the prosecutor inartfully started the question with a "who." In other words, the question could reasonably be interpreted as asking both "what" was Trotman doing with the cocaine and "who" else was involved.

Movant also contends that no foundation was laid for this question, but again, Movant has not shown prejudice. He has not shown that Trotman actually lacked a basis for his response. Indeed, Trotman later testified that he actually saw Movant "cook" the cocaine on five different occasions. (*Id.* at 113.) This is an adequate foundation for his testimony that Movant would cook the cocaine.

Movant also contends that his attorney should have objected to the following exchange:

> Q What was he doing with -- what were you doing with your part [of the cocaine base]?
>
> A I was selling it.

Q What was he doing with his part?

A Selling it.

(*Id.*) Once again, Movant contends that the prosecutor failed to lay a proper foundation. But Trotman later testified that he personally saw Movant sell cocaine base around 200 times. Thus, an objection would not have accomplished anything.

Movant contends that it was prejudicial for the prosecutor to ask how many times Trotman saw Movant sell cocaine base, and for Trotman to testify that he saw Movant selling it approximately 200 times from the home at 910 Westnedge. Movant argues that he was only being charged with distribution on July 21, 2010 and possession with intent to distribute on July 28, 2010. Although Trotman's testimony was certainly prejudicial, it was not unfairly so. A history of repeated sales from Movant's home was directly relevant to the distribution charge as well as the charge of possession with intent to distribute the cocaine found in Movant's room.

Finally, Movant objects to two leading questions to Trotman about the nature of a "rubber-band bank" and the fact that it is a typical means for drug dealers to sort money when paying for a drug deal. The testimony arising from these questions was not material to Movant's guilt, and there is no reasonable probability that its exclusion would have changed the outcome of the proceedings.

In short, Movant has not shown objectively unreasonable conduct or prejudice from counsel's failure to make various objections to Trotman's testimony.

**Ground VI. Failure to object to prosecutorial misconduct**

Movant characterizes some of the prosecutor's actions as prosecutorial misconduct, and claims that his attorney was ineffective for failing to object to them.[4] The Sixth Circuit has developed a two-part test for reviewing claims of prosecutorial misconduct based on statements made by a prosecutor during a criminal trial. First, the Court determines whether the prosecutor's statements were improper. *United States v. White*, 563 F.3d 184, 193 (6th Cir. 2009). If the statements were proper, the inquiry ends and it is unnecessary to address the second part of the test. If the prosecutor's statements were improper, then the Court makes a determination whether the improper statements were flagrant and warrant reversal of a conviction. *Id.* There are four factors utilized to determine if an improper statement was flagrant: "1) whether the statements tended to mislead the jury and prejudice the defendant; 2) whether the statements were isolated or pervasive; 3) whether the statements were deliberately placed before the jury; and 4) whether the evidence against the accused is otherwise strong." *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003). If an improper statement was not flagrant, the conviction will be reversed if "1) the proof of the defendant's guilt is not overwhelming; 2) the defense objected to the statements; and 3) the trial judge did not cure the impropriety through an admonishment to the jury." *Id.* The Court will use this test to guide its analysis of the reasonableness of counsel's failure to object and any prejudice suffered by Movant therefrom.

---

[4]To the extent that Movant asserts prosecutorial misconduct as a claim separate from ineffective assistance of counsel, his claim is procedurally barred because Movant did not raise this claim on direct appeal and he has not alleged, let alone shown, cause and prejudice for his failure to do so.

1. Closing Argument

During closing argument, the prosecutor stated that "[W]e're here because Marjuan Fleming made himself perhaps the most open and notorious crack cocaine dealer in Kalamazoo. . . . He sold to hundreds of people coming to that apartment." (Closing Argument Tr. 3, 4.) Movant claims that there was no evidence about who the most notorious drug dealers were, and that the evidence did not support the prosecutor's claim that Movant sold to hundreds of people. However, it was not improper for the prosecutor to make arguments based on reasonable inferences drawn from the evidence presented at trial. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). That evidence included witnesses observing Movant selling crack cocaine hundreds of times, and telling Movant to stop selling drugs out of the house because neighbors were complaining about the number of people. It also included a video in which Movant flaunted his wealth to his neighbors and to others on the Internet.

Movant contends that the prosecutor misrepresented the fact that there was a stipulation that the substance purchased by Hargrave from Movant on July 21, 2010, was crack cocaine. However, Movant's counsel did stipulate to this fact, as well as to the fact that the substance discovered in his room was crack cocaine. (Trial Tr. 3-4, 20, 38.)

In addition, Movant objects to several statements by the prosecutor when referring to the YouTube video, including the prosecutor's statements that the video depicted: "the excess of the participants";"a collection of Kalamazoo's finest hoodlums getting together for a regular street party"; participants who "bragged about the number of rubber band banks" in

Movant's satchel; Movant's statement that he took the satchel home "because [he did not] want to kill nobody"; Movant wearing "$28,000 worth of gold jewelry"; and what the prosecutor described as "a memory book" for a "drug dealer." (Closing Arguments Tr. 4, 5, 17.) Movant contends that these statements were improper recitations of character evidence. To the contrary, as the Court explained above, the prosecutor's statements were primarily aimed at highlighting the unexplained money and wealth in the video. Some parts of the video were not especially material or relevant to the conviction, but the video evidence, and the prosecutor's statements about it, were not so flagrant or prejudicial as to deny Movant a fair trial.

First, the jury saw the video and could evaluate for itself whether the prosecutor's statements were accurate. Second, none of the statements were so flagrant or prejudicial that they denied Movant a fundamentally fair trial or could have changed the outcome of his proceedings. The Government concedes that several statements were objectionable: referring to Movant and his friends as "hoodlums"; referring to participants in the video as bragging about the rubber-band banks; and statements about the value of the jewelry that Movant was wearing the in the video. However, there is no reasonable probability that an objection would have changed the outcome of the trial. The statements about "hoodlums" and individuals bragging about rubber-band banks were fleeting and isolated. The latter statement could be evaluated by the jury in their observation of the video and it was, in any event, not material to Movant's guilt. The Court cannot find any proper evidence supporting the Government's statement as to the value of the gold necklace in the video; however, the jury heard testimony

from Trotman about the amount of money in Movant's satchel, which was relevant to show Movant's unexplained wealth. Thus, the value of the necklace was not material; it was cumulative of other evidence pointing to Movant's intent. In addition, Movant's statement in the video that he took the money home because he did not want to kill anybody was relevant because it confirmed that the money belonged to him.

Finally, any impropriety in any of the foregoing statements during closing argument was mitigated by the strong evidence of guilt and by the Court's instruction that the lawyers statements and arguments are not evidence. (Closing Arguments Tr. 20.) Thus, Movant cannot establish that the statements were flagrant or that there is a reasonable probability that the outcome of his proceedings would have been different without the foregoing statements by the prosecutor.

2. Opening Statement

Next, Movant claims that the prosecutor misled the jury by referring to incidents that were not charged in the indictment. In his opening statement, the prosecutor indicated that Hargrave made three purchases of cocaine from Movant's house on Westnedge. (Opening Statement Tr. 44, *United States v. Fleming*, No. 1:10-cr-301, ECF No. 55.) This was supported by Hargrave's testimony. She was initially asked about a controlled purchase occurring on July 21, but she later confirmed that the police sent her to his house on several occasions, and other times she went there to purchase drugs for herself. (Trial Tr. 81-82.) Ferguson also testified that he paid Hargrave to conduct controlled purchases on three different dates. (*Id.* at 16.) It was not improper for the Government to refer to these incidents,

even though they were not specified in the indictment. *Cf. United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007) ("We have repeatedly recognized that prior drug-distribution evidence is admissible to show intent to distribute."). Indeed, Movant's counsel used the incident on July 26 to impeach Ferguson.

Movant also refers to the prosecutor's statement that a controlled purchase on July 21 led to a search warrant, whereas during trial Officer Ferguson testified that a controlled purchase on July 26 led to the search warrant. This was a minor discrepancy that had no meaningful impact on the outcome of the proceedings.

Movant contends it was wrong for the prosecutor to state that Hargrave "knew" that Movant "kept crack cocaine in his shoes. That where he normally pulled it out and gave it to her from." (Opening Statement Tr. 47.) This statement was supported by Hargrave's testimony; she acknowledged that she saw Movant take crack cocaine from his shoe. (Trial Tr. 72.)

The prosecutor also implied that Movant installed a deadbolt on his door, though Buchanan testified Movant did not put the lock on the door. Whether or not Movant installed the lock is immaterial. The fact is that he used the lock and he was the only one with access to the room.

In addition, the prosecutor indicated that Buchanan would testify that she confronted him about selling drugs but Movant "told her that unless she could afford to give him his $200 back, that's the way it was going to be." (*Id.* at 48.) Buchanan did not testify that this is what Movant said, but she testified that they "had a conversation about [Movant selling

drugs out of the house] and he wanted his money." (Trial Tr. 93.) The Government's description was substantially similar to the testimony that was eventually offered at trial. It was not exactly the same, but the Government does not act improperly by failing to anticipate the exact testimony that will be presented to the jury.

Finally, as with the Government's statements during closing arguments, the Court instructed the jury that the Government's opening statement is not evidence. (*Id.* at 38.) Thus, Movant has not shown that the prosecutor engaged in improper conduct that denied him a fair trial, or that any failure to object by his counsel meaningfully prejudiced him.

3. Trial brief

Movant contends that the prosecutor misrepresented what the evidence would show in its pre-trial brief. The statements in the brief have no impact on the trial or the jury's decision. Thus, Movant cannot state a claim based on those statements.

4. Hargrave

Movant also claims that it was improper for the prosecutor to charge him or to use Hargrave as a witness in support of its case. Movant notes that Hargrave testified that she became a paid informant in January 2007, that she had known Movant for three years at the time of trial, and that she had purchased crack cocaine from him 30 times. Movant mischaracterizes her testimony as stating that she purchased cocaine from him before she became a paid informant. Movant claims that this would not have been possible because he was incarcerated until August 2007. Contrary to Movant's assertion, Hargrave did not testify that she purchased cocaine from him before January 2007. Thus, his claim of prosecutorial

misconduct with respect to the use of Hargrave's testimony is unsupported.

5. Withholding evidence

Movant claims that the prosecutor improperly told the jury that there were no items in his room that were associated with anyone else. (Closing Arguments Tr. 6.) According to Movant, however, a pill bottle was also found in his room. His attorney raised this issue before the jury, indicating that the pill bottle would have had someone's name on it. (*Id.* at 13.) Thus, the issue was not withheld from the jury. Moreover, there is no reasonable dispute that Movant rented the room where the drugs were found and controlled access to it. Thus, even if the prosecutor's statement was technically incorrect, the presence of a pill bottle with someone else's name on it would not have meaningfully undermined the evidence against him.

**Ground VII. Failure of appellate counsel to challenge search of residence.**

Movant argues that his counsel on appeal provided ineffective assistance of counsel when failing to challenge the validity of the warrant that led to the discovery of the cocaine and other evidence in Movant's residence. Movant claims that Officer Ferguson's affidavit in support of the warrant was invalid because he falsely claimed that Hargrave purchased crack cocaine from Movant on July 26, 2010.

When a petitioner claims that counsel was ineffective "because counsel failed to litigate a Fourth Amendment claim, he must also show 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been

different absent the excludable evidence in order to demonstrate actual prejudice.'" *United States v. Soto*, 794 F.3d 635, 646 (6th Cir. 2015) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

According to the affidavit in support of the search warrant, which was signed by Officer Ferguson on July 27, 2010, he met with a confidential informant (i.e., Hargrave) "within the last 24 hours." (Ex. to 2255 Motion, ECF No. 2, PageID.129.) He instructed Hargrave to purchase crack cocaine from 910 North Westnedge. She went to that area and returned a short time later with crack cocaine. She told Ferguson that she went to the second-story apartment at 910 North Westnedge and made contact with "a black female, identified as 'Grandad's girlfriend.' 'Grandad' walked into the second story apartment for a moment and then walked out, providing the informant with crack cocaine." (*Id.*) Movant contends that this statement is false because Ferguson did not have an informant purchase drugs 24 hours before the search warrant. However, both Hargrave and Ferguson testified that Hargrave made a purchase of crack cocaine for Ferguson on July 26, 2010, the day before the warrant affidavit. (Trial Tr. 42-43, 74.) During the cross-examination of Hargrave, there was some discussion about whether Hargrave made her purchases from Movant or from a female at Movant's address, but Hargrave never contradicted her testimony that she made a purchase at Movant's address on July 26, 2010. Whether she was purchased it from a female at

Movant's address or directly from Movant does not matter for purposes of the validity of a search warrant for that address.

Hargrave also testified that there were "two occasions" that she went to Movant's address to purchase crack cocaine, and that the second time was on behalf of the police. (Trial Tr. 75.) Movant asserts that if there were only two purchases, then there was no purchase on July 26, because Ferguson testified about two earlier purchases, the first occurring on July 15, and the second on July 21. However, Hargrave never claimed that she made only two purchases on behalf of the police. Her reference to two occasions was apparently meant to distinguish a time when she made a purchase from Movant on behalf of the police and a time when she made a purchase from Movant's girlfriend for personal use, possibly on the same day. (*See* Trial Tr. 75 ("The first time when I went for my own usage, a female gave me drugs. They served me drugs. The second time when I went up to his house, he gave it to me, and that was for working for KVET.").) Thus, Movant's argument that there was no purchase 24 hours before the warrant affidavit, and that counsel was ineffective for failing to challenge the search on this basis, is meritless.

Movant also claims that Ferguson failed to inform the magistrate issuing the warrant that Hargrave was not reliable because she made purchases of crack cocaine for herself, which was a violation of her agreement as a confidential informant. Movant does not indicate how that fact would have been relevant to the validity of the warrant, especially in light of the fact that, according to the affidavit, Hargrave's reliability was established by a history of making controlled purchases and providing information to the police that led to the arrest of

others for committing drug offenses. (*See* Aff. for Search Warrant 2, ECF No. 2, PageID.129.)

Movant recites the standard in *Franks v. Delaware*, 438 U.S. 154 (1978), in which the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request[.]" *Id.* at 155-56. Movant cannot satisfy this standard. He has not identified any false statements in the warrant affidavit, let alone statements that were made with knowing or reckless disregard for the truth.

**Ground VIII. Accumulated errors by counsel.**

Movant claims that the Government asked a number of leading questions of its witnesses, without objection by Movant's counsel. Movant has not shown, however, that these witnesses would have testified any differently if his counsel had objected. Moreover, the Court specifically instructed the jury that the lawyers' questions are not evidence. (Closing Arguments Tr. 20.) Thus, Movant has not shown prejudice, as required to demonstrate ineffective assistance of counsel.

**Ground IX. Failure to challenge in-court identification.**

Movant argues that his counsel provided ineffective assistance by allowing Hargrave to identify Movant in court during her testimony on redirect. Hargrave testified that she knew someone called "Granddad," and that is who she purchased the cocaine from. The

Government asked her, "The Granddad that we're talking about, that's Marjuan here, right?" (pointing at Movant), and she confirmed that it was. (Trial Tr. 81.) Movant contends that, without this testimony, there would have been no identification of Movant. To the contrary, there was other evidence of Movant's identity. Trotman confirmed that Movant's street name was Granddad, and identified Movant in the YouTube video. (*Id.* at 116.) In addition, Buchanan confirmed that she rented the room at 910 North Westnedge to Movant, whom she knew as Marjuan. (*Id.* at 90.) Thus, Movant's identity was not reasonably in dispute.

**Ground X: Failure to pursue *Brady* violation.**

Movant argues that the Government failed to disclose (1) that Hargrave had been purchasing drugs for personal use during her time as a confidential informant, and (2) that Hargrave purchased crack cocaine with police assistance on only one occasion at Movant's residence. Movant's counsel raised the first issue in a supplemental brief on appeal, after the time for briefing closed. The Sixth Circuit refused to consider it, because it was not raised in Movant's initial brief on appeal.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true Brady violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v.*

*Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281. "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002). "If previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986).

In this case, Movant has not demonstrated prejudice that would support a *Brady* claim. As to Hargrave's personal use of drugs, she testified about this during her direct examination. Immediately after testifying about her agreement with the Government, the prosecutor asked her whether she had used any drugs since she signed the agreement, and she confirmed that she had and that if she had been caught, she would have been in trouble. (Trial Tr. 68.) On cross-examination, Movant's counsel asked Hargrave a number of questions about her personal drug use. On re-direct, the prosecutor confirmed that he had spoken with the witness for the first time on the Friday (one business day) before trial, and that was when she told him that she had used drugs. (*Id.* at 81.)

The evidence of Hargrave's use of drugs in contravention of her agreement with the Government is impeachment evidence, insofar as it undermined Hargrave's credibility. But this evidence came out during trial, and Movant's counsel had an opportunity to use it during her cross-examination. Movant does not indicate what else counsel could have done if the

evidence had been disclosed earlier. Nor has Movant established that the outcome of the proceedings would have been different with full disclosure of this information prior to trial. Indeed, as the Court of Appeals noted, "[r]egardless of Hargrave's credibility, the record contains ample evidence pointing to [Movant]'s guilt for distributing crack cocaine to a confidential informant." *United States v. Fleming*, No. 11-2094, slip op. at 3 (6th Cir. Jan. 30, 2013). Hargrave "never wavered in her testimony that she purchased cocaine from Fleming on July 21, 2010." *Id.* at 4.

The other *Brady* issue asserted by Movant, the fact that Hargrave made only one controlled purchase, is not supported by the testimony at trial. Ferguson testified, and Hargrave confirmed, that the police sent her to Movant's address "several times." (Trial Tr. 16, 81.) Moreover, the issue is not material to Movant's guilt or innocence. He was charged with distribution on or about July 21, 2010, and both Ferguson and Hargrave provided specific details about this conduct. Thus, he has not shown that the prosecutor withheld relevant evidence or that he was prejudiced. Because the *Brady* claims are meritless, Movant has not shown that counsel was ineffective for failing to pursue them.

**IV.**

In a motion for discovery under Rule 6 of the Rules Governing 2255 Proceedings, Movant seeks discovery of all reports and analysis regarding the destroyed evidence that was the basis for the dismissed charges in Counts 1, 2, and 4. Movant asserts that he is actually

innocent, and that the lab reports will prove that he did not sell any drugs to a confidential informant.

"'Habeas petitioners have no right to automatic discovery.'" *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1991) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."). Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that the Court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a). To demonstrate good cause, Movant must provide "'*specific allegations* . . . [that] show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore, *entitled to relief* . . . .'" *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (emphasis in original). "'The burden of demonstrating the materiality of the information requested is on the moving party.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Stanford*, 266 F.3d at 460). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Id.* (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)).

The Court must examine Movant's grounds for relief when assessing his requests for discovery because the showing required by Rule 6(a) is entwined with the merits of his

claims. *See Bracy*, 520 U.S. at 904 ("Before addressing whether petitioner is entitled to discovery . . . to support his judicial-bias claim, we must first identify the 'essential elements' of that claim.").

Movant has not demonstrated good cause. Movant asserts that the requested discovery will show that he is actually innocent. However, actual innocence is not an independent basis for relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *accord House v. Bell*, 547 U.S. 518, 554-55 (2006). A claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404).

In short, Movant can raise actual innocence to avoid a procedural bar, such as his failure to raise a claim on appeal, but he cannot raise it as an independent ground for relief. The only claim for which the Court considered a procedural bar is Movant's claim that the prosecutor committed misconduct. However, the Court found no misconduct. Consequently, like all his other claims, this claim is meritless. Thus, there is no claim for which the actual-innocence exception to procedural default would apply. In other words, actual innocence is not relevant to Movant's motion for relief. Therefore, he has not shown good cause for discovery.

Furthermore, even if actual innocence was relevant, he has not demonstrated good cause to support discovery for a claim of actual innocence. Movant's belief that the police reports and other evidence will show that he did not sell crack cocaine is wholly speculative. Indeed, Movant's counsel stipulated on the record that the evidence found in Movant's possession was crack cocaine, and Movant expressly agreed to this. (Trial Tr. 2-4.) Counsel also stipulated that the substance purchased by Hargrave on July 21 was crack cocaine. (*Id.* at 20.) Movant offers no basis to dispute the stipulations and evidence that this is what Hargrave purchased. Consequently, the motion for discovery (ECF No. 9) will be denied.

**V.**

For the reasons stated above, Movant's motion to vacate, set aside, or correct the sentence imposed upon him by this Court will be denied as meritless and/or barred by procedural default. Because the Court finds that the "motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), no evidentiary hearing or further discovery is required.

Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability. To warrant the grant of a certificate of appealability, Movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Sixth Circuit Court of Appeals has disapproved of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted." *Id.* at 467. Because Movant cannot make a substantial showing of the denial of a federal constitutional right with respect to any of his claims, a certificate of appealability will be denied. Accordingly,

An order and judgment will enter consistent with this Opinion.

Dated: December 20, 2016

/s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE